Frank M. McKey, Trustee, Appellee, v. L. C. Erbes, Appellant, et al., Appellee.

AUCTIONS AND AUCTIONEERS:    Agency—Sales on Credit.
1   Where auctioneers, by contract, bound themselves to collect the purchase money, and to pay the same to the use of the owner within 10 days, and became guarantors of the credit to the owner, they were agents of the owner, but their agency was coupled with an interest; and a purchaser at the auction sale had the right to rely upon the auctioneers' personal offer of credit, and to make bids accordingly, and acquire title thereby, especially where the auctioneers did, in pursuance of their contract, account for the purchases with cash.

APPEAL AND ERROR:    Review—Harmless Error—Judgment In-
2   flicting only Nominal Damages.  In a replevin action, where part of the property taken belonged to a third person, who was brought in as a party defendant, the original defendant could not complain of a judgment awarding such property to the third person, as he had no interest therein, and could be damaged only nominally, especially where he had not asked for the return of the property, but for a judgment for its value.

AUCTIONS AND AUCTIONEERS:    Rights of Purchaser—Sales on
3   Credit.  The rights of a purchaser on credit at an auction sale, where the auctioneers had power to give credit, were not affected by any dispute as to the commission claimed by the auctioneers, or by the agreement of the parties.

*Appeal from Black Hawk District Court.*—H. B. Boies, Judge.

October 25, 1919.

Action of replevin.  The plaintiff obtained possession of the property under a writ.  It alleged that it was the

absolute owner of the property. The defendant denied the ownership and right of possession of the plaintiff, and avers himself to be the owner, and entitled to possession. There was a directed verdict for the plaintiff, and the defendant appeals.—*Affirmed.*

*Sanborn, Graves & Appel, A. W. Mullan,* and *J. T. Sullivan,* for appellant.

*Hiner, Bunch & Latimer, Reed, Tuthill & Reed,* and *Pickett, Swisher & Farwell,* for appellees.

Evans, J.—The goods involved in the controversy were offered for sale by the defendant at public auction. The auctioneer accepted the bid of the plaintiff therefor. (In this discussion, the Auto Parts Company will be referred to as plaintiff, although it is now represented by a trustee in bankruptcy.) The defense of the defendant, Erbes, was, in substance: (1) That the plaintiff had not paid for the goods so bid off; (2) that the auctioneer exceeded his authority in extending credit to the plaintiff; (3) that the auctioneer further exceeded his authority in selling at unauthorized prices. The facts, so far as they relate to the question of title to the goods, are not involved in any material dispute. The defendant, Erbes, was engaged in business at Waterloo, in the sale at retail of "auto parts." He proposed to sell out his stock. For that purpose, he entered into a contract with Michael Tauber & Co., of Chicago, the material portion of which contract was as follows:

"Whereas, the said L. C. Erbes is desirous of selling and disposing of all of said property at public auction, and,

"Whereas, the said Michael Tauber & Co. is engaged in the business of conducting sales of property of the character above described at public auctions;

"Now therefore the said L. C. Erbes hereby does employ the said Michael Tauber & Co. to prepare, allot, assort and sell all of the said property at public sale commencing on

"January 3d, 1917, and to continue until all of said property is sold upon the following terms and conditions:

"The said Michael Tauber & Co. hereby agree in and for the consideration of the payment to it by the said L. C. Erbes of a sum equal to ten per cent of the amount realized from the sale of all of said property at said public sale and which amount the said L. C. Erbes hereby agrees to pay to it: To perform the following services for said L. C. Erbes in and about said sale, to wit:

"First. Prepare, allot, assort and arrange at their own expense the said property in separate lots in a skillful manner for the purpose of said sale.

"Second. Advertise at their own cost and expense said sale in several automobile trade journals and magazines, in several of the Chicago and Detroit newspapers and by publishing and mailing descriptive circulars to prospective purchasers, dealers and buyers of automobile materials and accessories.

"Third. To furnish an auctioneer to sell said property on said date of sale; said auctioneers to be persons usually employed by it to conduct such sales.

"Fourth. To furnish such help at their own cost and expense to properly manage said sale and deliver the property sold.

"The said Michael Tauber & Co. in consideration of the aforesaid hereby guarantee to pay to said L. C. Erbes the respective amounts bid and accepted for any and all parcels of property declared sold by the auctioneer at such sale and agree to pay the proceeds of said sale to said L. C. Erbes as follows:

"First. To deduct from the gross amount realized from

said sale a sum equal to ten per cent thereof in full for their compensation.

'Second. Pay to the Leavitt & Johnson National Bank, Waterloo, Iowa, the sum of twenty-three thousand, five hundred ($23,500) dollars, or the amount found due said bank for indebtedness owing it by said L. C. Erbes.

"Third. The balance if any to be paid in cash to said L. C. Erbes within ten days from conclusion of said sale.

"The said L. C. Erbes, in consideration of the aforesaid agrees that no part of said property heretofore set forth shall be sold from this date until the date of sale save and except in the conduct of the business and service departments as now conducted in the usual manner.

"The said Michael Tauber & Co. agree to furnish to said L. C. Erbes a full and complete catalogue of the several lots and parcels of the property to be sold."

At the time this contract was entered into, Leavitt & Johnson's bank held a bill of sale of all of Erbes' property as security for a debt of nearly $25,000. In order to satisfy the bank, and to obtain their consent to the sale, it was mutually agreed between the bank and Erbes and Tauber & Co. that Tauber & Co. should sign the following guarantee:

"Chicago, Illinois, December 22d, 1916.
"Leavitt & Johnson National Bank,
    "Waterloo, Iowa.

"We have a contract with L. C. Erbes of Waterloo, Iowa, providing, that we shall sell all of the automobile parts and all of the property of L. C. Erbes located in the building now occupied by him in Waterloo, Iowa, at auction on the third and fourth days of January, 1917.

"We understand that you have a first lien on said property amounting at this time to approximately, seventeen thousand five hundred ($17,500) for an indebtedness now owing you by Mr. Erbes.

"We understand that Mr. Erbes is asking for a further loan of approximately six thousand five hundred dollars ($6,500).

"Our contract with Mr. Erbes provides, that from the first proceeds of the sale, we shall pay over to you the sum of twenty-three thousand five hundred dollars ($23,500) which we understand was to cover the seventeen thousand five hundred dollars ($17,500) now owing and the additional loan that he expects to make.

"Now in consideration, that you make such further loan to L. C. Erbes, we hereby agree to pay to you from the proceeds of the sale, the total indebtedness of L. C. Erbes to you, not exceeding twenty-five thousand dollars ($25,000), and we further guarantee to you, that we will realize from the sale of such property, more than twenty-five thousand dollars ($25,000).

"We further agree that this money is to be paid to you on or before the 10th of January, 1917."

Pursuant to the foregoing contracts, Tauber & Company took possession and control of the goods, and prepared the same for the sale, which took place January 3d and 4th. The plaintiff sent a representative to the sale. In order to induce him to purchase, Tauber, on his own account, extended the plaintiff a credit of $5,000. Its purchases were less than such amount. The sales, on their face, amounted to a sum total of about $43,000. Of this sum, however, only $17,000 were bona-fide sales, and the remaining $26,000 represented the bidding in of property on behalf of the defendant, Erbes. The $17,000 of bona-fide sales included the bids of the plaintiff. The amount of plaintiff's bids was assumed by Tauber personally, and the cash therefor was turned in by him in accordance with the terms of his contract: that is to say, he paid to the Leavitt & Johnson National Bank, in cash, the full amount realized from the bona-fide bids, less his commission. The amount thus

turned in and accounted for included the purchases of the plaintiff. 'All this was done within 10 days from the date of the sale, as provided by the contract.

This is the state of facts upon which the defendant's contention is based that the plaintiff had not paid for the goods. The argument is that Tauber, as auctioneer, had no authority to extend credit, and that, there-

1. Auctions and Auctioneers: agency: sales on credit.

fore, his principal was not bound to recog nize the bid. The argument is based wholly upon the law of the auction. It is assumed that the relations between Tauber and Erbes were strictly that of an auctioneer to his principal. The auctioneer represents a class of agency. The law defining his authority and duty is quite well settled. The contract between these parties, however, involves more than the relation of principal and auctioneer. The contractual undertaking of Tauber & Company went beyond that of an auctioneer. By their contract, they assumed full control of the property in advance of the sale, for the purpose of assortment and preparation, and they bound themselves to collect the purchase money and to pay the same to the use of Erbes within 10 days following the sale. These were obligations which would not be created by their employment as mere auction- eers. Furthermore, Tauber & Company became guarantors to the bank for the payment of $25,000 out of the property in their hands. The consideration running to them for such guarantee was the property and their contract in relation thereto. Their relation, therefore, to Erbes was somewhat more than that of agency. They were agents, but their agency was coupled with an interest. Erbes could not terminate their agency upon his own volition. They had executory rights which they were entitled to enforce. They had vital interests which they were entitled to protect. Tauber & Company and Erbes acted jointly in the conduct of the sale. There was no limitation in the authority of

either of them made apparent to bidders. We think it clear that the plaintiff had a right to rely upon Tauber's personal offer of credit, and to make its bids accordingly,—especially so, in view of the fact that Tauber & Company, pursuant to their contract, did account for the purchases with the cash. It follows, therefore, that Erbes did receive the cash for these goods, and the title thereto, accordingly, passed to the bidders.

II. It further appears from the record that another Auto Parts Company, from Kansas City, was represented in the bidding by one Nelson. This company was also included in the extension of credit by Tauber.

2. Appeal and Error: review: harmless error: judgment inflicting only nominal damages.

Pursuant thereto, such representative purchased property to the amount of about $700. Its bids were taken care of by Tauber in precisely the same manner as were those of the plaintiff. Under the writ of replevin, plaintiff took, not only such property as was purchased by its own representative, but it took also that which was purchased by Nelson, the representative of the Kansas City Auto Parts Company. The Kansas City Auto Parts Company was later made a defendant, and it appeared, and claimed the property purchased by its own representative. Such property was awarded to it by direction of court, at the conclusion of the evidence. The defendant, Erbes, complains of this procedure. By the procedure adopted, the Kansas City Auto Company obtained the benefit of plaintiff's writ of replevin, without instituting any suit of its own, or putting up any replevin bond. The argument for this defendant is that the plaintiff is bound to recover upon the strength of its own title, and that, inasmuch as it failed in showing title as to the property awarded to the Kansas City Company, there should have been judgment awarding the return of the property to this defendant. The method of procedure will bear criticism, but the prejudice suffered

by the defendant was nominal only. The property taken under the writ appears to have been taken by the plaintiff and put into the channels of trade. This defendant, in its answer to the petition, did not ask for a return of the property, but for a judgment for its value. Assuming that the plaintiff took wrongfully from the possession of this defendant the property which belonged to the Kansas City Auto Parts Company, what was the measure of this defendant's damage for such wrongful taking? Manifestly, it was the value of this defendant's interest in the property wrongfully taken. Inasmuch as he had no interest therein, nominal damage was the utmost which he could have recovered. If there was any real controversy between the plaintiff and the Kansas City Auto Parts Company, it is not made apparent on this appeal. We see no prejudice suffered by the defendant, Erbes, at this point.

III. The real grievance of defendant was not in the issue that was actually tried. It appears that Tauber & Company charged the defendants a commission on the sum total of $43,000, whereas the defendant contends that the commission should have been charged on $17,000 only. Such controversy could not, of course, be litigated in this case, nor could the existence of it prejudice the rights of the plaintiff to the property which it bought. It is argued that, because Tauber & Company withheld a commission of $4,300, instead of $1,700, to such extent they failed to pay to Erbes the proceeds of the purchases by plaintiff, and that, therefore, the title of the property failed to pass to the plaintiff. We do not think that the plaintiff could be so affected by the private agreement of the parties, nor by any controversy arising therefrom. The sales to plaintiff were accounted for by Tauber & Company, and the amount thereof was charged to Tauber & Company as due from them under the terms of the written contract. If Tauber is

3. **Auctions and Auctioneers:** rights of purchaser: sales on credit.

wrongfully withholding from the defendant a greater commission than is due, that is a matter of accounting between them. Erbes' remedy is against Tauber. The plaintiff was not charged with notice of any breach of contract or excess of authority on the part of Tauber. We reach the conclusion that the verdict was properly directed for the plaintiff. The order is, accordingly,—*Affirmed.*

LADD, C. J., PRESTON and SALINGER, JJ., concur.